Would the attorneys who are going to make a presentation today please approach the podium and state your name and the party that you represent. Good morning, Your Honor. This is Craig Sandberg, S-A-N-D-B-E-R-G, on behalf of the plaintiff's appellate. Good morning, Your Honor. My name is Paul Bozek, and I represent the defendant, Noble, who is here happily today. Okay. We've allotted 30 minutes for argument today. The appellant can reserve a few minutes for rebuttal, if you desire. With that, you may proceed. Thank you, Your Honor. Case number 18-1046, Saravilia Urbina v. Noble Network of Charter Schools, BBA, Noble Schools Charter School. Good morning, Your Honor. May I please have the court counsel? This case is about, actually, a young lady who goes to Noble who is injured during an exercise PE class that was being routed through what has been pled as a dilapidated alleyway, essentially. But we don't really get to that issue until we get to the primary issues, which is that in this That's an affirmative defense. They did it not through the pleading itself, but through raising it through the motion to dismiss. What the position that they have taken is a couple different things. The first is that the contention is, at first, that the one-year statute that is permitted under the affirmative, under the defenses and immunities provided by the Illinois Tort Immunity Act, which is one year. And then they go up beyond that and they talk about that, I think, probably the two main arguments they take is that the allegations against them are related to a policy that a discretionary decision-maker made. The third, I guess, is that the plaintiff hasn't properly pled a willful and Charter schools is mentioned nowhere in the Tort Immunity Act in the definitions of what constitutes a local public entity. That's important because this is a statute the legislature decided to put together and they could include anybody that they wanted to. They could amend it at any time to include those definitions of a charter school. The way that the defendant tries to bootstrap itself into affording itself all of the immunities and defenses in the Tort Immunity Act is by a limited reference that's contained in the Charter School Act talking about having to comply with the Tort Immunity Act. There is no guidance contained in the Charter School Act or any references in the Tort Immunity Act that helps. They looked to a case out of the Fourth District that we have appended to our reply the relevant statute that was in place. Nowhere in that particular statute does it include what portions of the Tort Immunity Act would be applicable, what aspect of the Tort Immunity Act is applicable. What about Section G? We have the Northern King Educational Corp case which says it applies to charter schools. We have this subparagraph G that says we are exempt from Illinois laws except the Tort Immunity Act. Why would the legislature put that in there if it didn't apply to charter schools? That's an interesting point because that seems to be one of the things that the Fourth District was struggling with and in fact when they wrote their reply they put in brackets that those portions of the Tort Immunity Act that they believe are applicable which in this case would be related to if the court got to the idea that the Tort Immunity Act applied to the charter schools that it may be immunity from discretionary decisions about policy and it may be immune from allegations of negligence and so only willful wanting claims. Where do we find those exceptions? Well the exceptions are contained in... I mean you want us to do a construction that the Tort Immunity Act only applies when it comes to discretionary? Right, so what I'm getting to that is in the Northern King decision that's what the court does. The court puts those brackets to put its sections of the Tort Immunity Act are applicable to it and that is those are the one series and that would be I put it on page three of my brief that 745 ILCS 10.4-1-101 through 1-210. Those particular sections of the Tort Immunity Act do not include the one year statute of limitations and so what I understand the Northern King decision relates to is it's suggesting that the heightened pleading or the heightened proving that has to be done of a willful and wanton claim like this is what's required as opposed to negligence. But I'm not sure how it is that they got to that. There is the suggestion that counsel has that the G section is clear but it's not clear. In fact it's not clear and that's why in the Northern King the courts who spot they chose to add those sections of what would be in court fourth district believe that all of the Tort Immunity Act applied. There would be no reason for it to bracket those particular sections and that matters. It matters for lots of reasons because if the Tort Immunity Act on itself doesn't make clear that charter schools are about that it believes that the charter school is a local public entity and just by being a charter school, whether it be a local public entity, then we need to look to other sources. But doesn't section G3 expressly provide that they're not exempt from the Tort Immunity Act or am I misreading G3? I'm sorry. Doesn't G3 expressly provide that they're not exempt or am I misreading G3? That they're not expressly exempt? Uh-huh. Well. In the inverse. I had to think about the question. I apologize. I think your question really is doesn't G3 say that the full Tort Immunity Act may apply to a charter school? I'm not sure that that's clear. I certainly understand that that's what the statute says. The fourth district didn't think it was clear and that's why it appended and bracketed what portions of the Tort Immunity Act it believed was relevant. But we also know from a line of care, which is referred in our brief, as well as, for instance, the Brugger decision, the O'Toole decision versus Chicago Zoological Society, those Supreme Court cases talk about when an entity that is, for instance, a private school, a private academy, charter school for instance, wants to assert itself that it falls within the umbrella of the Local Public Act and the Tort Immunity Act, that there are certain things that have to be made clear. Not the least of which, for instance, in the O'Toole case, which is at 39 Northeast 2nd, 946. That's a 2015 case. This is after Carroll and after Brugger, but it talks about the fact that the school was not tightly enmeshed with government because it was not controlled by a unit of local government is one of those reasons why they wouldn't be entitled to all the immunity supported under the Tort Immunity Act. In this particular case, and again, this went out on a motion to dismiss, and so it was based solely on the pleadings and it was on the record now before this Court, the defendants didn't offer any evidence of how it is that they believe factually that they would fall within the umbrella of Local Public Entity and the Tort Immunity Act. They have just taken the position that there's reference to the Tort Immunity Act and the Charter School Act, and there are certain immunities and defenses that are available under the Tort Immunity Act, and so that's why it wasn't, that's not sufficient for the trial court to have granted a motion to dismiss. So counsel, you would say that we should take from the Northern Cain case that when that language said we are not exempt from the Tort Immunity Act, but what the legislation really meant is we are not exempt from certain provisions of the Tort Immunity Act. Correct. That's what the Fourth District decision appears to be saying. Well, that was sort of in the bracket after they said the Tort Immunity Act, right? Right. But that wasn't pertinent to the outcome of the case, right? They weren't talking about that there. Tort Immunity was not the big issue in the Northern Cain case. That's correct. That's correct. But when they decided to look at what portions of the Tort Immunity Act would apply, they chose to include in their decision, finding precedent, there isn't anything in any other district other than that Fourth District case that talks about in relation to a school-like noble network what portions of the Tort Immunity Act would apply. It was, it wasn't, Northern Cain was sort of a string site of a bunch of statutes that are listed, right, and they put citations next to each of them? Correct. Do you think they were purporting to define something that was not at all central to the holding of that case? We can't get behind why they chose to do that, but in the absence of... Well, how about this then? Why, if the General Assembly had wanted to pick and choose which provisions of the Tort Immunity Act would apply to charter schools and which would not, wouldn't they have been specific in saying that? They said we're not exempt from the Tort Immunity. That's a statutory scheme of laws, right? It is a statutory scheme, yes. I mean, how are we supposed to dice up which ones apply and which ones don't? Well, I'm not sure that it's clear as to what aspect of the Tort Immunity Act is supposedly applicable to... How about all of them? I mean, isn't that the position the other side is taking? Well, I certainly, yes, that's certainly what they're saying. They're saying every aspect of it... I mean, they say the Tort Immunity Act, full stop. They don't say the Tort Immunity Act's provisions regarding policy directives or negligence or willful one. They don't get into any of it. They just say the Tort Immunity Act applies to these bodies, right? It says that under the Charter School Act that the Tort Immunity may apply, except that at the same time there is no decision made by the legislature to amend the local public entity section so as to include charter schools. It would have been just as easy to make it clear so that we wouldn't have to be before this body by including that specifically as a local public entity because of the control aspect of it. Those cases of Brugger and Carroll and O'Toole are important because in order for an entity to be under and to benefit from all the government, it has to be controlled by the government. There isn't anything to the contrary. There haven't been any additional explanations contained in any more recent Illinois Supreme Court cases saying that that's not the case when it's an entity that is outside the direct umbrella of government. And that's what those cases specifically deal with. So it's the plaintiff's position that first, we don't believe that because the Tort Immunity Act doesn't include the charter schools that the Tort Immunity Act applies. Secondarily, we don't believe that to the extent that the Charter School Act refers to or includes the Tort Immunity Act control. And that's important because we as practitioners, the defendant needs to know what it's entitled to and what it's not entitled to. You know, isn't the defendant in this case controlled by the government because the statute itself says you ought to comply with all these laws? So they're basically directed by law, by the legislation to comply with these laws. And you're exempt from certain ones, but you're not actually, the statute says we control you because you have to comply with all these laws. Well, I think the issue of control in relation to whether or not it's a government control is more than simply people having to comply with statutes or regulations. There's a control aspect that when we talk about the facts in a tool, they talk about that a not-for-profit corporation only conducts the operation of government's public business if it is controlled by the government. And it goes on to say, stated differently, the key inquiry in a case like this is whether the not-for-profit corporation seeking Tort Immunity remains subject to quote-unquote operational control by a unit of local government. And on the record now before the court, that just doesn't exist. And so I think at a minimum, the court should reverse the trial court's decision and have it remanded back so that there can be a more robust inquiry about the level of government control over this noble network. Getting to the second issue, essentially, which is whether or not the Tort Immunity Act applies to them based on Northern Kean, where they bracketed the certain areas that may be applicable to a school like Noble Network. And the issue is whether or not any of the allegations the plaintiff has made involve decision makers regarding policy. And on the route this physical education class running through an alley that is dilapidated. To me, facially, there isn't anything about that that could ever be subject to a discretionary decision maker about policy. But again, based on the record now before the court, I just don't see that. Finally, the suggestion that the plaintiff hasn't pled a robust complaint so as to demonstrate allegations of reckless conduct, willful wanton conduct. And I think that based on the allegations that have been pled, that a finder of fact could conclude that routing this PE class running through this dilapidated alley, as we've alleged, might constitute a reckless disregard for the safety of those participants. And if that's the case, then we would have pled sufficient facts to get past a motion to dismiss and allow us to go forward on that. Does the court have any questions for me? Yes. Thank you. Thank you, Your Honors. Mr. Boies. I'd like to restrict my discussion this morning to essentially the statute and the few cases that Noble relied upon in the briefing before the court. I think the, I have something to add to the discussion in that our position has been, obviously, from the briefing, that the Northern Kane case controls the issue before the court. It's a Fourth District case, of course. I could find no other Illinois appellate court decision that was even close to the Northern Kane case. And, you know, as I prepared for today and reread everything, everything seems to finally make sense to me, and I can make a brief presentation of it, in terms of what the Northern Kane case did and why the statute was, the charter school statute, was drafted the way it was. And counsel relies upon the Illinois Supreme Court case in Carroll that I think predated the charter school case. And in the Carroll case, which plaintiff relies upon, it was not a charter school case. It was a hospital case. And they said, the Illinois Supreme Court said in that case, that the hallmark of being a public entity in Illinois would be, are you subject to the Freedom of Information Act, and are you subject to the Open Meetings Act? And then when they came along and did the charter school law, you can see right out of the box, they made the charter schools in Illinois subject to the Freedom of Information Act and the Open Meetings Act. That was of paramount importance. And if you go back to what the you're a public body. And so when they drafted the Charter School Act, they put that right up front and center, and they said, charter schools are going to be subject to these two laws. And then they went on. In what at first blanches a little bit of a complicated read of the statute, they said, charter schools will not be subject to any other laws. These two they will be. They're not going to be subject to any other laws. And as we know, Your Honor, you asked, the Northern Kane case was actually a labor dispute. And they said, that law they're not subject to, because it fell under the verbiage of, no other Illinois laws apply. And then they get to the third part of it, and they say, except this list. And that's why at first reading, the the statute's unclear, vague, and ambiguous. It was argued in the brief. It was argued again today. But the Northern Kane case expressly says, we find the statute clear. It's the only is clear. And then they enumerate. And as time, the list has changed. And I think I can explain why it's changed. I think the legislature left it open to change, to account for technology and things that are going to develop in the future for schools, reporting crimes, things of that nature. But they list, without limitation, the tort immunity. And as time, the list has grown, I think in conjunction with technology. And they've said, okay, we know the two you're definitely bound by. You're not bound by any other except for our list. And that list has grown over time. They added the exception in Kane to the list. limitation on the fact that the entire Tort Immunity Act applies to charter schools. And I don't think there's any law otherwise. I don't know the answer to that. And I've been scratching my head over that. But I would say this, that earlier in the decision, and it's important for today's discussion, they used the Tort Immunity Act repeatedly throughout that decision as an illustration. And they said, when they were pointing out how these other laws apply. And I could read it for the court. I plan to. But you have it in front of you. They say, the Tort Immunity Act applies. And they used the Tort Immunity Act as an illustration for why Section G has that list. And they did it without any sort of limitation. I almost think it's a typo because I've looked it up. And if you look at the sections that they have in the parenthetical, it's only the preamble to the statute and the definition section. That wouldn't make any sense if they were somehow meaning to limit it. But even in counsel's own reply brief, he says, and it's obviously well-settled law, I wouldn't think an appellate court on its own could amend a statute. And counsel cites law to that effect in his brief. Are you aware of any instances in the statutory, in the compiled statutes, where a portion of the Tort Immunity Act was adopted but not the whole thing? Can you say that again, Judge? I'm sorry. Are you aware of any place in the Illinois compiled statutes where the Tort Immunity Act was adopted or referenced only in part? I'm not. I mean, it may exist. I'm not aware of it. I'm not aware of it. There's one other case that I wanted to highlight that's in my briefing that I think is important. And that's the Northern District case of Jordan v. Northern Kane. Because, and I want to raise it for a moment, because the plaintiff in the briefing repeatedly points out the fact that the, not Noble, but the owner of Noble is a private enterprise. And it, I think it undermines the entire argument that the plaintiff is making in this case. That case, Jordan v. Northern Kane, was a 1983 case, which explains why it was in federal court, and Judge Holderman issued the decision in that case. But he said, Illinois law is very clear that even a private entity that owns a charter school is considered a governmental body for purposes of being a state actor. And I think that's very important for our discussion today. Because in that case, they denied the defendant's motion to dismiss that they were not a state actor. So I think, you know, under the charter school law, you take the good with the bad. You're going to be a public entity for purposes of having the Tort Immunity Act apply to you, but you also take the bad with that. Even as a private entity, you can then be sued as a state actor under Section 1983. And that, Judge Holderman's decision has been cited across the country as a decision that illustrates how a private entity can be a state actor, and they use the Illinois charter school law as an illustration for that. Finally, to the Court, I would, you know, briefly remiss, and I'm going to end on this. Unless I'm mistaken, I'm hearing new cases argued today by the plaintiff, which I don't think is appropriate. I think it's in violation of Supreme Court Rule 341. There's also a case, Russell, cited in the reply brief for the first time that should have been argued earlier, and that case was miscited anyway, you know, for the proposition that another court has somehow held that the Charter School Act has a two-year statute of limitations applied to it. That was not held in the Russell case by Judge Dow over in the Northern District. That case merely stands for the proposition that the litigants in that case stipulated to the fact that there's a two-year statute of limitations for personal injuries in Illinois. It was not a finding by the Court in any sense of the word, and I think that case should have been cited in the brief to begin with and is in violation of Supreme Court Rule 341. In addition, the cases that were argued this morning, O'Toole and Berger, did not appear in any of the briefing. I addressed the Carroll case that plaintiff relies upon, and I think I've explained to the Court that that case actually favors the appellee's position in this matter. Finally, I'm out of time, so I argued this morning only the findings that were relied upon by the trial court in granting the motion to dismiss. I'll have to stand on my brief concerning the other arguments that were not relied upon by the trial court, but before I sit down, I'm happy to accept any questions. Thank you. Thank you. Mr. Sander. Very briefly, I appreciate your time. Counsel, again, as they did in their response brief, talks about how the Northern Keene case talks about how subsection G is so clear, but if it's so clear, and it was so clear to the Fourth District, there would have been absolutely no reason for it to append its understanding of the applicable portions of the Tort Immunity Act that were governable. And so I think it's a mischaracterization of the Fourth District's belief that that particular statute was so clear. And true, it is our position that given the language of these statutes and the interplay between them, that it is not clear that Noble Network is a charter school entitled to all of the immunities and defenses that the Tort Immunity Act affords local public entities. Moreover, to the extent that counsel had just talked about whether or not O'Toole or whether or not Brugger, these all fall from Carroll. It's the same logic behind any of these. So it's not a new argument. It's not anything more than the recitation of what Carroll says, is that there is information that is relevant and germane for the purposes of a trial court understanding, and obviously for this Court of Appeals as well, to understand whether or not the entity that is attempting to make itself available to the affirmative defenses and the immunities under the Tort Immunity Act, that it demonstrate the government control over it. Not merely that it has to adhere to certain statutes. We as drivers have to adhere to the Illinois Vehicle Code. It doesn't mean that we're doing anything other than we have to abide by those laws. It doesn't make me a governmental entity because I've got to follow the law. So unless the Court has any questions, we appreciate your time. But we certainly think that this is an issue of first impression, and certainly first impression of this district. Thank you very much. The case was well-argued, well-briefed. We appreciate it. And a decision will be issued in due course. Thank you.